All right, our next case for argument is Self Storage Advisors v. SE Boise Boat & RV Storage, and Mr. Ellison. Thank you, Your Honor. And did you wish to reserve time for rebuttal? I wish to reserve three minutes, please. Okay, keep an eye on the clock, please. Understood. May it please the Court, my name is Jamie Ellison. I'm counsel from the Collins Law Group. I represent SE Boise Boat & RV Storage. That entity is referred to in the briefing as BBRV. With the Court's leave, I'll follow that same practice here. If I refer to the client by name, I'll refer to BBRV, which was an investment group that purchased land and developed a boat & RV storage facility. They were then sued, so they were defendant below an appellant here. They were sued by a member of the group who had been charged with operating the facility under an entity known as SSA. They were the plaintiff below, they're the cross-appellant here. The lawsuit was first filed in federal court, and there were two claims for damages. The plaintiff didn't prevail on either claim. And at the end of this analysis and at the end of this briefing, at the end of this argument, this turns out to be a relatively simple attorney fee case. Now, it's not a usual attorney fee case where we talk about, doesn't the district court just have discretion? Certainly they do over questions of quantification of an award. A district court does not have discretion over whether to apply the correct prevailing party status, and that was the error here. The district court did not correctly apply the prevailing party standard. And we look at Idaho law, correct? Indeed we are, Your Honor. We're looking at what the Idaho statutes and case law says about this. That's absolutely correct. It was a diversity action. The substantive law of the forum state is what controls. And Idaho's civil rule, Civil Rule 54, specifies that when measuring whether a party was a prevailing party, the key language is to check in relation to the relief sought. And if the district court below would have measured the outcome in relation to relief sought, there's really, and I hesitate to say it because it always sounds like overstatement, but it's not here. There's really only one possible outcome if you measure this in relation to the relief sought, and that is because the relief sought was over a million dollars. Well, wait a minute. Let's break that down a little bit. So the complaint did not state any specific damages. It was an amount to be determined at trial. Is that correct? Which amounts were later specified. That is correct. Okay. So there were two claims for breach of contract and based on two potential contracts. So plaintiffs couldn't have prevailed on both. They could have prevailed on both. They weren't mutually exclusive at all. In fact, they pursued both. Well, but the second contract was alleged to have replaced the first. So if that were true and they had prevailed on that claim, then the first contract wouldn't have been valid. So you were as – I'm sorry. I didn't understand that question. Well, as I understood it, the claim for the second purported contract was that it superseded the first contract. Under the second, the altered contract, they claimed both forms of damages. Under that, they claimed extended management fee and a right to a brokerage commission. If they would have prevailed, they could have prevailed on both claims. Okay. So how do you get to a million dollars? Because the brokerage fee claim is worth – well, I'll answer it, picking it up the way you framed the question. From the complaint, we don't know that it's over a million dollars. They submitted an expert report, which was also submitted as an exhibit, regarding the extended management fee. And the base amount for that claim was $524,000. And with interest that they also claimed, it was over $600,000 for the extended management fee claim. But wasn't that opinion variable, as in for how long the – for how many months or days or years the damages were assessed? The relief sought was $524,000 in principle. The report broke it down that if the judge allowed a different timeframe, then the number was graduated. That number changed based on the timeframe that it was awarded. Right. So the relief sought, Your Honor, was – The maximum timeframe would get you to your $600,000? Over $600,000, which was the relief sought. That was the relief quested. That was what the expert testified to. That was what was put in the exhibit. Yes, Your Honor. And that's the first part, the extended management fee part. The other part, the brokerage claim, which was dismissed on summary judgment, as this panel is aware from reviewing the materials. That claim – the evidence in the submissions to the district court referred to the court-conducted mediation before Magistrate Michael Williams. But it's an easy number to identify. The property at the time was valued at about $6.5 million. The brokerage fee claim was a buyer and a seller commission. It was a buyer and a seller commission, so you'd get both parts. And the ordinary – the customary commercial brokerage percentage was somewhere from 4 to 6. So if it's 4 to 6 and you get both parts, it'd be 8 to 12. We just used the 10 percent number because that's the midpoint. So it'd be 10 percent of what was at the time a $6.5 million property. So that's another $650,000 or so. This was all brought out during the session with the magistrate judge? This quantification – yes, yes. And in the record before the district court, when the number was identified, an alternative number was never proposed. Council hasn't in briefing and probably won't today propose an alternative number because that's never been in the record. The number that was always understood and negotiated was that roughly a $650,000 number because it's about a $6.5 million property, and you're talking about the seller and the buyer commercial brokerage rates. Let me ask you. This case didn't get – I guess once the district court ruled on summary judgment, the case settled. Is that right? No, Your Honor. It went on for quite a while because the extended management fee claim, that $524,000 principal claim, was still live. When it was finally settled was when the last ruling was made on a motion in limine. My client – we filed a motion in limine to preclude any damages beyond a 23-month period. There was always some period of time that my clients would have been willing to pay to settle, and in the end that's all they did because the judge did rule on the Friday before trial was going to start. Trial was going to start on the extended management fee claim, and it would have been a fight over about $600,000. Before trial and the pretrial documents that they had to submit, did they identify what they were seeking, the amount of money that they were seeking? They did, and then they attached it in an exhibit, that expert report, that said principal amount escalating up for interest into the $600,000 range. Yes, indeed, Your Honor. So we were going to go to trial on over $600,000 of extended management fee claims. The judge, however, had granted our motion in limine. Counsel had filed a motion for reconsideration that wasn't ruled on until the Friday before the Monday when trial was going to start. So on Friday, Judge Windmill gave us several orders. He granted BBRV's motion for reconsideration on certain facts that could, in fact, be argued during the trial, and he denied SSA's motion for reconsideration, saying I meant what I said. There's no legal basis to ask for damages past the 23 months. There was a time period that had been identified. At that point, they had effectively lost, and my client had effectively won. We dismissed the broker fee claim earlier on Sunday. They could have gotten this, what did you say, 23 months? Could have gotten up to 23 months, and they didn't get even half of that in a stipulated judgment. There was always some amount that was never really in dispute. So once the orders came down, we talked, and that weekend we were able to agree the cases weren't that much anymore. It's what BBRV had said all along. We said we've always been willing to pay you this amount. Here it is. Take it in a stipulated judgment. There wasn't an agreement on fees. And so we did what we see in the Idaho case of Crump, the 2009 Idaho Supreme Court case, where the parties agreed to a stipulated judgment to avoid trial, left it up to the trial court to determine the prevailing party status, and moved on from there. That's what we did. What did you ultimately settle for? $25,000. Stipulated judgment for $25,000. And to compare that, Your Honor, to the Crump case, that doesn't meet the threshold that we know from Crump. Now, this court's not going to tell the Idaho Supreme Court what the minimum threshold is before you can be a prevailing party, but the Idaho Supreme Court has already told us that they didn't reach it in Crump. In Crump, it was a very similar case. They got 7% of what they had sought, and the Idaho Supreme Court said, not only do you not prevail, the other side prevails. If all you get in a stipulated judgment is 7% of what you sought, the side being sued is the one that prevails. That is Idaho law on the question. That is the Crump 2009 case. So is Crump distinguishable because there were counterclaims? Not Crump. There are several of the other cases where they are distinguishable because counterclaims come in into the analysis. In Crump, the total of all the aggregate, the total was 2,600 and something. They got 220. You've seen the briefing. You've seen the case. No. If you add everything in, then this case is very parallel with Crump, and they obtained even less here. So, again, the defendant should be the prevailing party because that's the standard Idaho law set. Now, with regard to whether cases are distinguishable because of counterclaims,  there is one case, Oaks, where the party prevailed because they got, and they only got 8%. So it starts to look like that's a real fine line between 7% or 8%, except it is distinguishable because they also defeated over $30,000 in counterclaims. So if you did an overall analysis or aggregate what their actual success was, always in relation to the relief sought. Now, you can either do that one bite at a time or aggregate it all together, but you have to do it in relation to relief sought, and that's what Judge Windmill didn't do below. He never did that analysis. He never did it either with regard to the individual claim or all the claims aggregated. But finishing my comment on this Oaks case, it starts to make it look like, wow, is there really that much of a difference between 7% or 8%? Because if you only get 7%, the other side beats you. If you get 8%, you won. In that case, it was your Honor's comment that makes the difference. They had obtained 8%, but they had also defeated the counterclaims in full, and so if you did the full analysis, their success was well over 25%, well over 30%. Now, I don't know what the magic line is, and this Court's not going to try to tell that this Ninth Circuit Court of Appeals isn't going to try to set the standard for Idaho. This Court will leave that up to Idaho Supreme Court. But sitting in diversity jurisdiction on appeal and taking the decisions that the Idaho courts have already given us, we do know that if it's only 7%, the defendant prevails in that case. We don't know where it changes. We do know that it matters. If you also defeat counterclaims, that means your prevailing number could be a little lower. That didn't happen here, Your Honor, and that's an important point that has to be made. Our clients were not litigious. They didn't assert any counterclaims. They just defended against the claims that were asserted. So the full measure of success is going to be measured by how much they defeated in the claims that were asserted against them. On the first claim, brokerage-free fee, they defeated it 100%. Let me ask you one more question. You said the settlement was $25,000, not $225,000. Just $25,000, not $225,000. Thanks for the clarification, Your Honor. I'm asking you for clarification. We're clarifying the question, and I'm providing the clarification. It was $25,000, 2-5-0-0-0. $25,000 was the stipulated judgment. Right. I mean, that's not a tiny amount. It is when you're claiming over $500,000 and you've cost $200,000 worth of litigation. At that point, from any economic perspective, it is a tiny amount of a recovery. Now, we don't have to – minimal would be the more acceptable word. It would be minimal. Minimal. And we avoid – Better word. Yeah, it's a minimal recovery, and it doesn't meet the crump standard that Idaho has set. You've got to at least meet this threshold. It's not that. It's not a high enough percentage to satisfy a crump. Your Honor, I realize I asked reserve free. If I could reserve the remaining 1 minute and 40 seconds, realizing I already chewed some of it up, I'll do that, Your Honor. Yes. Thank you. All right. Mr. Lloyd. Yes, thank you, Your Honor. And this is a matter involving an appeal and a cross-appeal. Do I have the opportunity for a rebuttal on the cross-appeal as well? I'm completely fine if not. I just want to know what the mechanics are. Well, you've both got an equal amount of time. He's going to get a minute and 30-something seconds in rebuttal. I don't think it's going to make a difference. Fair enough. Fair enough. Thank you, Your Honor. And may it please the Court, Counsel, my name is Tom Lloyd. On behalf of the plaintiff and the cross-appellant, in this case, Self-Storage Advisors, LLC, I will be referring to the parties as their designations below, plaintiff versus defendant, and I think that will help keep things on track and understandable. Now, in the underlying case before the district court, there was a matter that was filed. It was for breach of a services contract for management of the self-storage facility. At the time that the pleadings were filed, there were two versions of a contract that existed in the universe. And so there was a question early on as to which one of those two versions of the contract was going to be the operative and governing contract for purposes of adjudicating the case, the breach of contract claim. And so knowing that there were two versions of a contract out there, the plaintiff filed the action asserting two counts under Rule 8A3 in the alternative, explicitly in the alternative, because as Judge Beatty recognized before, the second version of the contract was intended in a sense to be an amendment to the first contract. And so there was always a recognition that not both of the contracts would be the operative contract. It was just going to be a part of the case, trying to figure out which of these two contracts is, in fact, going to be the operative contract between these parties. And so the two— Wasn't the second contract, though, giving your client more money? At the pleading stage, we didn't know. At the pleading stage, it was not clear because we didn't have a good sense. I mean, it is the pleading stage. Well, you had added a brokerage fee on top of what the other contract was. If there was going to be a brokerage fee. No, but you added it. Sure, sure. There was the added— You wouldn't have made that change or that amendment if you weren't seeking the brokerage fee. The change was made to make it consistent with another contract that was going to be— No, you were seeking the brokerage fee. And so there was going to be potentially sometime in the future, at an uncertain date, with an unspecified amount of a sale price, maybe some point in the future, some additional brokerage fee. We're not talking about a minimum amount. But it would also be a right of first refusal only. So the fact of the matter is the defendant could have come to my client and said, hey, we'd like to do this ourselves, but we have to give you the right of first refusal. So if you'd like to do it for half a percentage— Let me just ask you this. On the allegations with both these contracts, let's assume you went to trial and you prevailed on the second contract. What would you have gotten? Well, that— You didn't know? You didn't have any idea? As we look on through the record, that's one thing that we ultimately decided, and you can see it in the expert report, we didn't ever put a dollar value on that brokerage fee claim because we knew that there was— Let me ask you this. Frankly, it was too unclear. The brokerage fee was in relation to what? The brokerage fee was in relation to, I guess, the eventual sale of the property. Is that what you're asking? Yes. Yeah. So at some point, it could have been five years in the future. Are we talking about a little, tiny piece of property, or are we talking about a— It's a self-storage facility where there are— It's fairly substantial. Sure. But that could have been something that they could have decided to sell in three years, or they could have decided to sell 20, 50 years down the road. This could have been something. I mean, the fact of the matter is that was too unclear as we got into discovery and as the case proceeded along. It was too unclear as to whether there would ever be a dollar value that could be attributed to that particular portion of the claim,  When you filed the complaint, and let's just assume that you only had the first claim, that is, the management fee, and you had prevailed just on your claim, what was the benefit to you? What would you have recovered? The benefit was the lost management fees. How much was that? In the complaint, we had pled in an amount to be proven at trial. It was really going to come down to— What did the contract provide for it? What was the monthly fee? It was $2,225 roughly per month, but there was no end term in the contract. And so as the plaintiff, we were basically forced into the situation. There was no end date. There was no final calculable amount that we could determine. There must be some principle in Idaho law that says when that situation happens, the court can impose a reasonable term. Well, what we believed it would be would be that the jury, or the trier of fact, would ultimately determine what is the reasonable amount, so that's what we pled. That's why the breach of contract claim was based solely on what is the proof at trial, what is the ultimate trier of fact going to determine is a reasonable amount of time for which that management fee should have been paid going on into the future. Did I understand that Judge Windmill limited that to 23 months? Excuse me? Sorry. Did I understand that Judge Windmill limited that to 23 months? Ultimately, yes. So 23 months times $2,200 basically. And ultimately, if there had been not a settlement in this case, that's probably a decision that we might have considered appealing because it was just based upon something that was happening in a different case altogether. It was nothing that was inherent in the contract. It was nothing that was based upon any sort of a breach of contract. It was just sort of a ruling in limine by Judge Windmill. But ultimately, yes, at the time of the settlement, it had been limited to 23 months. And so we kind of did the analysis, and we determined that under Idaho law, $25,000. All of this discussion about the percentages, and was it 7% or 8%, none of that is actually borne out in any of the cases in Idaho that adjudicate this prevailing party determination. None of them focus on this percentage differentiation in the way that the defendant has. They all focus on whether or not the amount sought was nominal or paltry. That's borne out in all of the cases that are cited on pages 39 through 40 of our second brief on cross-appeal. And so we have two assignments of error, really, of the district court here. One of them has to do with the way that the legal standard was used. In the first sense, yes, it is an abuse of discretion standard, but of course within that abuse of discretion standard, if the court is applying the wrong rule of law, that is something the court has to review de novo. And what we have in Idaho law, looking at different lines of cases, is we have a line of cases where there are claims and counterclaims by and between parties, where the court is supposed to take an overall view of the prevailing party. It essentially enables the court to avoid getting into the nitty-gritty of each individual particular claim and instead step back and say, as an overall view, who was the prevailing party here? And then the other line of cases, Clark v. Latimer, cases that even this court has decided before in the Hardenbrook, they recognize that when it's only a plaintiff asserting a singular claim, which we contend is the case here, it was separated into two counts because that's what Rule 883 allows us to do, but it was really just one claim, a breach of contract. That's what it always was, damages for breach of contract. Whatever those damages would ultimately look like at the conclusion of trial, it was always a breach of contract claim. That line of cases, you take a look at what was the plaintiff successful in a meaningful manner. That's what all of those cases hold. That meaningful manner standard, again, is based upon, was the ultimate recovery nominal or paltry? And in all of these cases that we've looked at, and the defendant hasn't been able to cite to a single case otherwise, where there is only a plaintiff asserting claims, there have been cases where the amount of recovery was only $2,000. The amount of recovery was $7,500 versus $160,000 sought, where that amount was not deemed to be nominal or paltry, and the plaintiff was not. Let me ask you this. In Rule 54D, which is cited throughout, D1B, Big B, it says that when Judge Mimril was making his determination, it says, in determining which party to enaction is a prevailing party and entitled to cost, but there's another provision that says that also applies to attorney's fees. Sure. The trial court must, in its sound discretion, consider the final judgment or result of the action in relation to the relief sought by the respective parties. Now, here, Judge Windmill looked, and I think he said you were a prevailing party, right? Correct. And then he also looked at the other side and said, well, you know, they had a defense here. It was quite substantial, and they prevailed on that. So they both prevailed, and in my discretion, I don't think either side really warrants an award of fees. Why is that an abusive discretion? Well, respectfully, Your Honor, that's not what Judge Windmill did. Well, that's why I read what he did. Well, he looked at count one, which was the original breach of contract, the one that survived summary judgment, if you will. And he said, without doing any sort of analysis along the lines of what you said in the second part of your question, that there was a defense and it brought down, that wasn't the basis for him determining that the defendant was in part a prevailing party in this action. Judge Windmill decided correctly that that $25,000 judgment did render the plaintiff, the prevailing party, for purposes of that count one. What Judge Windmill did is he said, but there was this other count two out here, and this other count two was for this other contract, and on summary judgment, the defendant prevailed on that claim. So that's how he said you both won. Yes, that's how he said that we both won, and that's where we assign that error, because we think that he was correct in determining that the plaintiff was the prevailing party on the breach of contract claim. But then separately and aside, he said, well, but there was a second breach of contract claim, which we consent is inconsistent with Rule 8 that allows the alternative pleadings. It basically penalizes a plaintiff, penalizes a party, who at the very beginning of a case has to determine, well, we have a couple of claims. We could assert them all. If we assert them all, we will never get attorney's fees. Or we could take a gamble and hope that we guess and select the correct theory, the correct idea from the get-go. If we prevail, if we succeed, we will get attorney's fees, but we also run the risk of not getting anything at all. It's a terrible choice and one that is not borne out by the case law. In fact, this court in the Hardenbrook case, which is cited in our second brief on cross-appeal at page 25, this court has already looked at this very idea, where it was a pleading in the alternative, where three claims were asserted, a wrongful termination claim, a breach of contract claim, and a breach of the covenant of good faith and fair dealing claim. And this all stemmed out of Idaho as well. In the Hardenbrook v. UPS case, it was determined that Hardenbrook should have been determined, the prevailing party against UPS, because although it did not prevail on each of its alternative claims, it did prevail on the claim that it had asserted against UPS, however that was configured in the manner of alternative pleading. Yeah, well, okay. So that's, to answer your question. Well, no, but I think, you know, I think Judge, I'm just looking at his order here, and he says, you know, the result is the dismissal of count two, and consequently the claim for brokerage fees. As a result, defendant successfully avoided all liabilities to count two. In other words, you know, the other side prevailed on its defense. All liabilities. You know, maybe he didn't go on to say, well, that was a significant victory, but that seems to be what he was saying. At least that's what I read what he was saying. Well, at that time, like I said, we had never provided an expert report as to what that brokerage fee would be. I mean, as we got into the case and discovery proceeded along, we realized, and of course this early summary judgment came along in the process, but we realized that there was, in fact, no real ability. It was going to be too speculative to pursue this brokerage fee, but both of the contracts had in them the management fee. So the second contract only had the addition of the brokerage fee. It was all part of the case. Rule 8A, again, it allows us to plead those in separate counts. We could have, frankly, pled those in a single count. That's also permitted by Rule 8. And so the fact that we pled it as two separate counts, when it was still the same claim for breach of contract, that is the crucial error of the district court, because we were penalized for simply following the rule, following Rule 8, that allows us to do that when we have a circumstance like this, where something's unclear, maybe it's alternative theories, as was the case in the Wen case that we cited, that was cited with approval by this court in the Hardenbrook case, maybe something similar to what the Sixth Circuit has decided in that Waldo and that Thurman case. But sometimes, especially at the early stages of a pleading, you're going to have questions about what will be the ultimately successful, ultimately the most prevailing theory as a plaintiff. Rule 8 should not be construed to penalize a party who follows that rule. Well, you know, there are risks in everything, and there's risks in litigation. Well, there are risks in litigation. Nothing's a sure deal. But there's never been a case. There's never been a case where Rule 8 has been construed in that way, to penalize somebody who did that. In fact, all of the cases— I know there are a lot of Rule 8 cases. I wouldn't be so certain about that. Fair enough. At least all of the cases that have been cited by the parties in this case indicate, including what this court has done in that Hardenbrook case. And you settled for $25,000. We did settle for $25,000, yes, which is not either a nominal or a paltry amount when you look at the standards set forth in the In re Seria case, the Oakes case, the Bates case, the Griffith case, the Gilbert case. I will make one comment. I know my time is winding down here. But one comment with regard to counsel's argument. There has never been a case in Idaho that has done this percentage analysis. And counsel was in error when, Judge Beatty, you asked about, wasn't Crump a case where there was a claim and counterclaim going on at the same time? Yes, in fact, there was. In Crump, there absolutely was. Counsel said there wasn't. And in Crump, the court determined that the defendant was the prevailing party because they succeeded on all of their counterclaims versus the plaintiff, who had only recovered what counsel has represented as 7% of the claim that the plaintiff was seeking. I realize that I'm out of time. Your Honor, as we defer the rest of our argument to the briefing and we request that the court reverse the district court's decision that the defendant prevailed in part on that alternative claim and remand this case to the district court for further proceedings with that. Thank you. Thank you. All right. Mr. Ellison or Elison? Yes, thank you, Your Honor. My question is this. Tell me why Judge Windmill was wrong. He weighed both sides. He made you both winners and said you both take care of your own attorney's fees. Why was he wrong about that? He's wrong because we won on both claims. He's wrong because he didn't measure the management fee claim in relation to relief sought. He said that they won on the management fee claim. They didn't. They sought over $600,000, took a $25,000 settlement. That is 4%, and that is inconsistent with what Idaho law has established as a necessary threshold. And, Your Honor, in the Crump case, yeah, there were counterclaims. I wasn't saying there weren't counterclaims. I was saying that's not a distinction there because the court still did a net analysis and identified what is the amount requested. We're going to measure the relief sought versus the outcome, and that's what I'm suggesting this court must do with Crump as well. And if you do it with Crump, take account of the counterclaims. Take account of everything and see what is obtained in relation to the relief sought. And when you do that, Judge Windmill was wrong to say they prevailed. They obtained 4% in a settlement of what they were going after, and there's no question on that one what they were going after. They put it in. They put it in the exhibit. They marked it. It's over $600,000. They didn't even get more than 4%. That doesn't meet what Idaho says is a threshold. There is no Idaho case, though, as counsel was arguing. There's no Idaho case that's adopted, you know, said this is anything below this or above this is, you know. They haven't said that the percentage is a threshold, Your Honor. They have said that this does not constitute prevailing and it's an easy deduction for us to do the math on it because it's in cases where they've told us what the amount claimed was. Sure. They have never said the necessary threshold is you have to exceed 7%. But in the Crump case, they obtained 7%, and the Idaho Supreme Court said you not only didn't prevail, the other side did. They said that doesn't meet. That's not enough. They never told us what the exact number is, but they gave us a case that we have to consider as controlling authority, Your Honor. And the arguments about Rule 8 alternative pleadings, that's completely wrong. That's not an alternative cause of action. That's a separate claim. When we're talking about an alternative pleading, it's if you want your property back so you sue for either replevin or for conversion. It doesn't really matter which cause of action. You're going after the same justice. You want your property back. That's what an alternative pleading is. This never was. They said we want a management fee and we also want a brokerage fee claim. It's completely confusing to say that's an alternative cause of action. No, absolutely not. That's a misconstrual of what it is. It's just an extra claim. Both were defeated. All right. Thank you. Thank you, Your Honor. All right. So the case is taken under submission.
judges: PAEZ, BADE, Collins